IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | CIVIL ACTION 13-0613-WS-B |
| **URSULA C. ALLEN,** *et al.*, ) ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on Ursula Allen's Motion for Summary Judgment (doc. 31). The Motion has been briefed and is now ripe.

**I.     Factual Background.**[1]

The circumstances giving rise to this interpleader action are unfortunate. Back in December 2005, decedent Ulysses Allen applied for and received an Individual Fixed Deferred Annuity bearing contract number FX07102989 (the "Annuity") from John Hancock Life Insurance Company ("John Hancock"). (Doc. 31, Exh. 8.) On the application form, Ulysses Allen unambiguously designated the Annuity's beneficiary as "Estate." (*Id.*)

On or about August 22, 2011, Ulysses Allen's daughter Ursula C. Allen ("Ms. Allen") filed a Petition for Appointment of Temporary Guardian in Mobile County Probate Court,

---

[1] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, nonmovant Carla Walker's evidence is taken as true and all justifiable inferences are drawn in her favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [Ms. Walker]'s version of the facts drawing all justifiable inferences in [her] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

characterizing Ulysses Allen as "an incapacitated person" who was "currently a patient at the Mobile Infirmary Medical Center West, Intensive Care Unit." (Doc. 44, Exh. 1.) Ms. Allen represented to the Probate Court that her father "lacks the ability to make any major life decisions or the capacity to protect himself" and "is incapable of settling or filing a lawsuit or managing his health and financial affairs." (*Id.*) Ms. Allen specifically alleged to the Probate Court that "a temporary Guardian is needed to protect [Ulysses Allen] from exploitation." (*Id.*) Further, Ms. Allen reasoned that "[a] temporary Guardian is needed to provide for [Ulysses Allen]'s care and manage his financial affairs," and requested appointment for those duties. (*Id.*) The next day, Probate Judge Don Davis entered an Order Appointing Temporary Guardian, finding that "Ulysses Allen is in need of protective arrang[e]ments" and appointing Ms. Allen as her father's temporary guardian "for a period not to exceed fifteen (15) days." (Doc. 44, Exh. 2.) On its face, this temporary 15-day appointment was to expire no later than September 7, 2011.[2]

In a filing to the Social Security Administration on or about September 1, 2011, Ms. Allen asked that she be made "representative payee" for Ulysses Allen's Social Security benefits. In connection with that application, Ms. Allen declared under penalty of perjury that Ulysses Allen "is not mentally and physically [able] to take care of himself" and that he "needs a payee because he has a mental impairment." (Doc. 44, Exh. 3.)

On September 2, 2011, during the period of her temporary guardianship and mere days after informing the Probate Court that her father "is incapable of … managing his health or financial affairs" and needs protection from "exploitation" in his "financial affairs," Ms. Allen completed a "Change of Ownership and/or Beneficiary Form" (the "Change Form") for the John Hancock Annuity owned by Ulysses Allen.[3] (This was also one day after Ms. Allen told the

---

[2] In one of her summary judgment briefs, Ms. Allen suggests that she sought nothing more than appointment for Ulysses Allen's "physical care," as contrasted with a conservatorship "over a person who is not competent to make decisions." (Doc. 46, at 7.) Ms. Allen's filings and representations in Probate Court speak for themselves on this point. That said, Ms. Allen is correct that guardianship and conservatorship are distinct concepts under Alabama law, and that she was not appointed conservator of Ulysses Allen's estate.

[3] The summary judgment record reflects that Ulysses Allen was admitted to Mobile Infirmary Medical Center from August 2, 2011 through September 9, 2011, and that he was admitted to a nursing home upon his discharge from Mobile Infirmary. (Doc. 44, Exh. 9.) A doctor's letter dated August 10, 2011, elaborates that the reason for Ulysses Allen's hospitalization was "altered mental status," that he "carries a diagnosis of dementia," that (Continued)

Social Security Administration under penalty of perjury that Ulysses Allen suffered from a "mental impairment" that necessitated his Social Security benefits to be paid out directly to her.) She then returned that Change Form to John Hancock. (Ursula Allen Aff. (doc. 44, Exh. 11), at 2.) The Change Form purported to have been signed by Ulysses Allen on September 2, 2011, and listed "Ursula C. Allen" as the new primary beneficiary of the Annuity, to receive 100% of the proceeds. (Doc. 44, Exh. 4.)[4] The Annuity owner's signature was clearly worded "Ulysses Allen." (*Id.*)

Several months later, on February 22, 2012, Ulysses Allen purportedly signed a one-page "Last Will and Testament" in the presence of two non-beneficiary witnesses. (Doc. 44, Exh. 16, at 8-9.) In that Will, Ulysses Allen purported to "give all the rest and residue of my estate to Carla L. Walker," who is his granddaughter and the niece of Ursula Allen. (*Id.*)[5] The Will purported to appoint Carla Walker ("Ms. Walker") "to act as the executor of this will." (*Id.*) Notably, the Will made no specific mention of the Annuity, and no reference whatsoever to Ms. Allen.

---

Ulysses Allen was "confined to the intensive care unit," and that he was "poorly responsive and unable to make decisions regarding his medical care." (Doc. 44, Exh. 10.) Thus, it appears that the Change Form was executed during the period in which Ulysses Allen was in intensive care with a diagnosis of dementia, and in which his treating physician opined that Ulysses Allen was "poorly responsive" and "unable to make decisions."

[4] John Hancock sent a confirmation letter to Ulysses Allen at his home address in Prichard, Alabama, on September 9, 2011, confirming the change to name Ms. Allen the primary beneficiary of his Annuity. (Doc. 31, Exh. 9.) It does not appear, however, that Ulysses Allen promptly received or reviewed this letter, given that he was discharged from the Mobile Infirmary Medical Center to a nursing home on September 9, 2011.

[5] To clarify, the record shows that Ulysses Allen and his ex-wife, Claudette Allen (from whom he was divorced in or about 1990), had two children, Ursula Allen and Deborah Walker; and that Deborah Walker had a child, Carla Walker. (Ms. Allen Aff. (doc. 44, Exh. 11), at 1.) Deborah Walker (Ursula Allen's sister and Carla Walker's mother) died in January 2012. (*Id.*) And Claudette Allen (Ursula Allen's mother and Carla Walker's maternal grandmother) died in March 2014. (*Id.*) So this interpleader action boils down to a quarrel between the decedent's two closest living relatives (his daughter and his granddaughter) over Annuity benefits that John Hancock has deposited in the registry of this District Court.

Ulysses Allen died of natural causes on June 11, 2013, at the age of 74. (Doc. 44, Exh. 5.) His death triggered a flurry of maneuvering by both Ms. Allen and Ms. Walker. On July 16, 2013, Ms. Allen sent a Beneficiary Claim Statement to John Hancock in which she requested electronic funds transfer of the Annuity proceeds to her bank account. (Doc. 31, Exh. 3.) For her part, Ms. Walker sent an undated letter to John Hancock indicating that Ms. Allen's claim for Annuity benefits was "fraudulent," that Ms. Allen was "estranged" from Ulysses Allen and had "charges pending" against her "for theft of property and forgery of documents" in Ulysses Allen's name. (Doc. 31, Exh. 4.) On that basis, Ms. Walker demanded that John Hancock "[p]lease CEASE any claim distribution on the Annuity." (*Id.*)

Contemporaneously, Ms. Walker submitted the February 2012 Last Will and Testament of Ulysses Allen to the Probate Court of Mobile County, Alabama. Ms. Allen reacted by filing a "Verified Complaint for Will Contest" in Probate Court on or about September 18, 2013. (Doc. 31, Exh. 6.)[6] In that document (which Ms. Allen signed under oath), Ms. Allen averred as follows: (i) the February 2012 Will "was the product of the undue influence" of Ms. Walker; (ii) Ulysses Allen "was not mentally competent to execute a Will" in February 2012; (iii) Ulysses Allen "had a prior history of dementia" and had been manipulated by Ms. Walker into "refusing to communicate with [Ms. Allen] for the" last 20 months of his life (*i.e.*, from October 2011 through June 2013); (iv) during Ulysses Allen's 2011 hospitalization, Ms. Walker had attempted to gain "unrestricted access to the decedents bank accounts;" (v) "[s]ince prior to his several hospitalizations during 2011, the decedent lacked the mental capacity to execute a Will;" (vi) "the decedent was easily influenced by" others; and (vii) Ms. Walker had "obtained a Power of Attorney over the decedent" that she had then used "to withdraw funds from the decedent's bank account for her own use." (*Id.*)

The present status of the will contest is not delineated in the summary judgment record, nor is there any forecast of when a disposition may be reached; however, both parties indicate

---

[6] By Alabama statute, the will contest procedure is as follows: "A will, before the probate thereof, may be contested by any person interested therein, … and thereupon an issue must be made up, under the direction of the court, between the person making the application, as plaintiff, and the person contesting the validity of the will, as defendant; and such issue must, on application of either party, be tried to a jury." Ala. Code § 43-8-190. "When the judgment of the probate court is against the validity of the will, the probate thereof must be rejected; otherwise, the will must be admitted to probate." Ala. Code § 43-8-195.

that it remains ongoing and that no adjudication of the validity of the February 2012 Last Will and Testament of Ulysses Allen has yet been made.  (Doc. 31-1, at 6; doc. 44, at 7.)[7]  What is known, however, is that on October 31, 2013, Mobile County Probate Judge Don Davis appointed Frank H. Kruse as "Special Administrator of the Estate of Ullar See Allen a/k/a Ulysses Allen," with authority "to preserve, marshal and protect all assets of the estate."  (Doc. 31, Exh. 7.)[8]

In the meantime, John Hancock was left with the vexing problem of the competing claims by Ms. Allen and Ms. Walker to the Annuity benefits.[9]  So John Hancock availed itself of the mechanism created by Rule 22, Fed.R.Civ.P., by filing a Complaint in Interpleader (doc. 1), commencing this civil action in federal court.  The Complaint, which joined Ms. Allen and Ms. Walker as defendants, spelled out their dispute over the Annuity benefits (as chronicled above) and requested leave to deposit said funds with the Clerk of Court pending adjudication of the defendants' respective rights to same.[10]  Both Ms. Allen and Ms. Walker, appearing by and

---

[7]  Ms. Walker represents to this Court that "[t]he case pending in Probate Court has been extended multiple times, but most times at the request of Ursula Allen," purportedly to seek a tactical advantage in this case.  (Doc. 44, at 21 n.6.)  It bears noting, however, that no party has requested a stay of these proceedings until such time as the Probate Court sorts out the validity (or lack thereof) of the February 2012 Will.  Both claimants in this action are represented by counsel of their own choosing.  That being the case, the undersigned will not stay this action *sua sponte*, pending the determination of whether such will is to be probated or not (and therefore what role, if any, Ms. Walker will have vis a vis the Estate of Ulysses Allen).  Instead, per the parties' apparent wishes, this Court will play this matter as it lies and keep this litigation moving forward toward trial on a normal timetable.

[8]  In doing so, the Probate Court acted pursuant to an Alabama statute providing for appointment of a special administrator in will contests.  *See* Ala. Code § 43-2-47(a).  This appointment was temporary.  Indeed, "[u]pon the grant of letters testamentary or of administration, the authority of such special administrator ceases."  Ala. Code § 43-2-47(d).

[9]  To be sure, Ms. Walker does not appear to have ever submitted a beneficiary claim form to John Hancock or to have claimed that the Annuity benefits were due to be paid out to her directly.  She did, however, notify John Hancock that Ms. Allen's formal claim was "fraudulent" and demanded that John Hancock withhold payment.

[10]  On May 2, 2014, with prior leave of court, John Hancock deposited the sum of $93,387.32 with the Clerk of Court, representing the total amount of said benefits under the Annuity, plus applicable interest.  (*See* doc. 22.)  Having thus complied with its Rule 22 (Continued)

through counsel, timely filed Answers.  For her part, Ms. Allen claimed that, pursuant to the Change Form, she was "entitled to the entire balance of the funds from the annuity." (Doc. 7, ¶ 16.)  By contrast, Ms. Walker stated in her Answer that the Change Form "was improperly executed," that the signature on said form "was not the known signature of Ulysses Allen," and that the original application form for the Annuity (in which Ulysses Allen designated the beneficiary as "Estate") was controlling.  (Doc. 13, ¶¶ 15-16.)  On that basis, Ms. Walker requested the interpleaded funds be "immediately disbursed to the Estate of Ulysses Allen."  (*Id.*)

Of some significance to the pending Rule 56 Motion, John Hancock's Complaint did not name the Estate of Ulysses Allen as a separate defendant.  Both parties' counsel reached out to Frank Kruse, Special Administrator of the Estate, at various times to apprise him of the lawsuit and gauge his interest in participating.  On October 9, 2014, Kruse sent an e-mail to Ms. Walker's attorney, summarizing his position as follows:

> "My role is extremely limited as an Administrator ad Colligendum.  I am more or less a caretaker of the status quo for the estate until it is decided whether the Will is to be probated or not.  My understanding is that the decedent left an annuity as to which [Ms. Allen] is the named beneficiary.  I understand that your client claims that the beneficiary designation is invalid, and if this is correct I understand the beneficiary will be the estate.  Thus, it appears that the estate's interest is effectively being represented by your client.  I have no personal knowledge of anything relative to the beneficiary designation and, thus, have nothing to add substantively to the litigation.  I have no funds or other assets in the estate with which to hire an attorney, so I don't think I would be able to make any material contribution."

(Doc. 45, Exh. 1.)  The upshot of the October 9 e-mail was Kruse's conclusion that he did not seek to join this litigation but that if he were added, he would simply "file some sort of answer that says I don't know anything."  (*Id.*)  The Estate of Ulysses Allen is not now and has never been a litigant in these proceedings.[11]

---

obligations, John Hancock was discharged from this matter via Order (doc. 35) entered on September 19, 2014.

[11] That said, Ms. Walker filed a Motion for Joinder (doc. 37) on October 1, 2014, in which she requested that Kruse, in his capacity as Administrator *ad colligendum* of the Estate of Ulysses Allen, be joined as a party defendant to "protect the interest of the Estate of Ulysses Allen" in the Annuity proceeds.  (Doc. 37, at 4.)  On October 28, 2014, the undersigned entered an Order (doc. 48) denying the Motion for Joinder on the following grounds: (i) it was untimely, (Continued)

Now, Ms. Allen has filed a Motion for Summary Judgment, requesting entry of judgment as a matter of law on the following grounds: (i) Ms. Walker lacks standing to challenge the beneficiary designation and pursue a claim for the Annuity benefits; and (ii) no evidence supports Ms. Walker's claim to the subject funds. In response, Ms. Walker insists that she does have standing and that the summary judgment record contains substantial evidence from which a reasonable finder of fact could decide in her favor.

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

---

given that the applicable Rule 16(b) Scheduling Order fixed a deadline of May 30, 2014, for motions to join parties, and Ms. Walker had not shown "good cause" for the delay; (ii) Ms. Walker had failed to establish that the Estate of Ulysses Allen is a necessary or required party in this action for purposes of Rule 19(a), Fed.R.Civ.P.; and (iii) Ms. Walker could not force the Administrator *ad colligendum* to assert a claim to the subject funds, when Kruse had determined not to do so and had elected not to get involved despite actual knowledge of these proceedings, such that joinder would be a futile and hollow endeavor, in practical terms.

**III.     Analysis.**

   *A.       Standing of Carla Walker.*

The primary argument animating Ms. Allen's Motion for Summary Judgment is her contention that "Carla Walker lacks standing to challenge the authenticity of the Change of Ownership or Beneficiary Form for the Annuity because she personally has no legal right to any assets of Ulysses Allen." (Doc. 31-1, at 3.)  Of course, "[s]tanding is the threshold question in every federal case, determining the power of the court to entertain the suit. … In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue. … To establish standing, a litigant ordinarily must assert his own legal rights and interests and cannot assert the rights or interests of someone else." *U.S. S.E.C. v. Quest Energy Management Group, Inc.*, 768 F.3d 1106, 1108-09 (11th Cir. 2014) (citations and internal quotation marks omitted). "The focus of the standing inquiry is whether the plaintiff is the proper party to bring this suit." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (citation and internal quotation marks omitted).  In general, standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 120 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (internal marks omitted).

Ms. Allen is correct that Ms. Walker lacks standing at this time to litigate a claim for the Annuity proceeds on behalf of the Estate of Ulysses Allen.  It is undisputed that Ms. Walker has not been named personal representative of the Estate or executor of a will that has been admitted to probate; therefore, she currently has no formal role, title or capacity with respect to the Estate.[12]  Alabama law leaves no doubt that a prospective heir or beneficiary such as Ms. Walker

---

[12]     Of course, that could change at some point in the future, depending on the outcome of the pending will contest in Mobile County Probate Court.  If the February 2012 Last Will and Testament of Ulysses Allen is admitted to probate (effectuating the terms of that document naming Ms. Walker as the executor of said Will), or if Ulysses Allen is deemed to have died intestate and the Probate Court nonetheless appoints Ms. Walker to administer the estate, then she may indeed have legal authority to speak and act on behalf of the Estate at some future time.  *See generally* Ala. Code § 43-2-20 ("Whenever a will has been admitted to probate in this state, the judge of the court in which the will was probated may issue letters testamentary, according to the provisions of this article, to the persons named as the executors in such will, if they are fit persons to serve as such."); Ala. Code § 43-2-42(a) ("Administration of an intestate's (Continued)

lacks standing to pursue an action on behalf of the Estate. Indeed, "[b]eneficiaries under a will have no title until settlement and disbursement of the estate by the executors. An action filed on behalf of the estate must be brought by the executors. … Executors of an estate have entire authority over all the property belonging to the estate until the estate is settled." *Douglass v. Jones*, 628 So.2d 940, 941 (Ala.Civ.App. 1993) (citations omitted).[13] Insofar, then, as Ms. Walker might be purporting to litigate this action on behalf of the Estate of Ulysses Allen, she does not have standing to do so.

In response, however, Ms. Walker posits that she has standing to pursue a claim for the interpleaded funds in her own name. She reasons that she is either the sole heir to the Estate (if the Will is deemed valid and accepted into probate) or an heir with rights to the share of the Estate that passed through her mother (if the Will is found to be invalid and Ulysses Allen is deemed intestate). Given these circumstances, Ms. Walker insists, "she has a real and tangible interest in this action's subject matter." (Doc. 44, at 8.) Ms. Walker also notes the practical dilemma that she cannot simply sit back as someone else looks out for her interests because the Administrator *ad colligendum* has not been joined and is not participating in this action on behalf of the Estate. Ms. Allen's sole rejoinder to this point (*i.e.*, Ms. Walker's attempt to pursue a claim in her own name on her own behalf) is to hypothesize that other claims (*i.e.*, from medical providers) against the Estate might possibly exhaust the Estate's assets, leaving no Annuity

---

estate must be granted to one of the persons herein named if the person is willing to accept and satisfactory to serve in the following order: (1) The husband or widow. (2) The next of kin entitled to share in the distribution of the estate."). At present, however, those outcomes are mere hypotheticals that do not confer upon Ms. Walker the requisite standing to pursue a claim for the Annuity proceeds on behalf of the Estate.

[13]    *See also Cook v. Parker*, 27 So.2d 779, 791 (Ala. 1946) ("[T]he general rule is that personal assets are recoverable only by the personal representative. Neither legatees nor distributees can maintain suits concerning them …."); *In re Eldridge*, 348 B.R. 834, 845 (Bankr. N.D. Ala. 2006) (under *Douglass*, "no one other than the decedent's personal representative, including relatives, or heirs, or beneficiaries, or 'the estate' itself, has legal standing to file or prosecute an action on behalf of the estate"); *Franklin v. Garden State Life Ins.*, 2009 WL 1688085, *2 (M.D. Ala. June 16, 2009) (dismissing for lack of standing claims brought by plaintiff on behalf of the estate, where plaintiff "presents no evidence of the probate process nor does she establish that the Probate Court has appointed her as the *official* administratrix of the estate").

proceeds available to be paid to Ms. Walker.  (Doc. 46, at 2.)  In so arguing, Ms. Allen identifies no evidence concerning the existence and magnitude of any known claims against the Estate. Nor does Ms. Allen cite any authority that would forbid a claimant from asserting a claim on her own behalf if such circumstances were present.  This cursory, undeveloped counterargument presented in Ms. Allen's reply brief is not persuasive, yet the remainder of her discussion on the topic of standing focuses exclusively on the "on behalf of the Estate" angle, which is not the asserted basis of Ms. Walker's claims herein.

More fundamentally, Ms. Allen's position as to standing would yield an entirely inequitable and unfair result.  If Ms. Allen were correct that Ms. Walker is barred from asserting a claim on her own behalf for lack of standing, then Ms. Allen would have an unobstructed, unopposed path to the Annuity proceeds, despite evidence of potential irregularities concerning the Change Form on which her claim of right is predicated and a glaring unanswered question as to whether Ms. Allen is a valid beneficiary under the Annuity.  The Estate's Special Administrator made clear that he is sitting on the sidelines in these proceedings not because he thinks the Estate lacks a viable claim to the subject Annuity benefits, but because (i) his role as Administrator *ad colligendum* is narrowly confined, such that he is not certain he is authorized to pursue such a claim on behalf of the Estate; (ii) he believes the Estate's interests are represented by Ms. Walker's claim; and (iii) he lacks funds to litigate a claim on the Estate's behalf and has no personal knowledge of the underlying facts and circumstances.  In this posture, to rule in Ms. Allen's favor on the standing issue would be to allow her to exploit the vacuum in administration of the Estate and to ensure that Ms. Walker's position as to the proper beneficiary of the Annuity proceeds will never be heard, litigated or decided by anyone, anywhere at any time, thereby irretrievably extinguishing Ms. Walker's financial interest without ever reaching the merits.[14]

---

[14] Such a ruling would also undercut a significant portion of Kruse's rationale for remaining on the sidelines (*i.e.*, that Ms. Walker's presence as a claimant in this interpleader action rendered it unnecessary for Kruse to get involved on behalf of the Estate because "the estate's interest is effectively being represented by" Ms. Walker (doc. 45, Exh. 1)).  Kruse's apparent misunderstanding on that point would punish Ms. Walker and unfairly advantage Ms. Allen by allowing her to recover the full measure of interpleaded funds without contest from anybody, despite the questionable circumstances surrounding execution of the Change Form on which her claim to those funds hinges.

Alabama law makes clear that its concept of standing in the estate/beneficiary/heir context is not as inflexible or unyielding as Ms. Allen portrays it to be. The case of *Gunter v. Gunter*, 911 So.2d 704 (Ala.Civ.App. 2005), is instructive. In *Gunter*, James and Vicki Gunter were a husband and wife who were undergoing divorce proceedings, which included a division of certain undistributed personal property that had belonged to Olive Gunter, James' deceased grandmother. Victoria Gunter, James' daughter from a previous marriage and a beneficiary of Olive's will, sought to intervene in the divorce proceedings to protect her interests in that personal property in her capacity "as a beneficiary of the residuary estate of Olive S. Gunter." *Id.* at 709. The *Gunter* court expressly cited and acknowledged the general rule in *Douglass* (championed by Ms. Allen here) that "[b]eneficiaries under a will have no title" to personal property until the estate is settled. *Id.* Nonetheless, the Alabama Court of Civil Appeals went on to allow Victoria to intervene, holding that Victoria "does have such an interest in the personal property composing the residuary estate of Olive S. Gunter," and that she had a right to intervene in the divorce action because the executor of Olive's estate had not moved to intervene in his capacity as an executor, leaving Victoria's interest in the property not adequately represented by existing parties. *Id.* Two years after *Gunter* was decided, the Alabama Supreme Court cited the *Gunter* scenario as a recognized exception to the "general rule" that "personal assets are recoverable only by the personal representative" and "[n]either legatees nor distributees can maintain suits concerning [personal assets], though when recovered the personal representative holds them in trust for their ultimate benefit." *Van Hoof v. Van Hoof*, 997 So.2d 278, 294 (Ala. 2007). Therefore, *Gunter* appears to be good law in Alabama today.

      Ms. Walker's circumstances here are analogous (albeit not identical) to those of Victoria Gunter in *Gunter v. Gunter*. Specifically, Ms. Walker has an interest in undistributed personal property (*i.e.*, the Annuity benefits) that may belong to the Estate, yet no representative of the Estate has appeared in this action to protect the direct interest of the Estate (or the indirect interest of Ms. Walker), leaving Ms. Walker's interest wholly unrepresented by existing parties. If Victoria Gunter had standing to pursue her own interests in the estate property in *Gunter*, and the Alabama appellate court held that she did, then the same principles strongly support the conclusion that Ms. Walker has standing to do so here. Ms. Walker clearly has a personal stake in the outcome of these proceedings, and her interests are not being considered or represented by anyone else in this action.

For all of the foregoing reasons, Ms. Allen's Motion for Summary Judgment is **granted** insofar as Ms. Walker lacks standing to pursue claims in this action on behalf of the Estate of Ulysses Allen; however, the Motion is **denied** insofar as she does have standing to pursue claims in this action on her own behalf.

### B.     Presence or Absence of Genuine Issues of Disputed Fact as to Merits.

In the alternative, Ms. Allen maintains that she is entitled to summary judgment because no record facts support Ms. Walker's challenge to the validity of the Change Form. Ms. Allen's principal brief addresses only what she characterizes as the lack of evidence that the signature of Ulysses Allen appearing on that Change Form was a forgery. Ms. Walker's response, however, counters that there are genuine issues of fact as to both (i) whether the Change Form was "properly executed" (*i.e.*, whether Ulysses Allen was competent to execute same, whether Ms. Allen exercised undue influence, etc.); and (ii) whether the signature on the Change Form is, in fact, Ulysses Allen's signature.

#### 1.     The Motion to Strike.

As a threshold matter, Ms. Allen balks that the incapacity / undue influence theory is not part of this case and that Ms. Walker is improperly injecting new claims into this lawsuit through her summary judgment brief. In a Motion to Strike (doc. 47), Ms. Allen asks the Court to excise this entire line of argument from Ms. Walker's summary judgment filings. As grounds for this request, Ms. Allen reasons that "[n]othing in the initial claim by Walker nor in her narrative in the Joint Report of Parties Planning Meeting even suggests an assertion of a claim that Ulysses Allen lacked the capacity to execute the Change of Beneficiary Form." (Doc. 47, at 2.) Ms. Allen protests that allowing Ms. Walker to raise the issue of mental capacity at this time "would be extremely prejudicial" to her because "[n]o Discovery has been conducted with regard to Ulysses Allen's mental capacity." (*Id.* at 3.) On that basis, Ms. Allen asks that all aspects of Ms. Walker's brief and exhibits addressing the issue of incapacity / undue influence be stricken as irrelevant to the claims and defenses properly joined herein.

Ms. Allen's Motion to Strike cannot withstand scrutiny on this point. As an initial matter, the contention that Ms. Walker's pleading and the Rule 26(f) Report foreclose her from basing her claim on mental incapacity is inaccurate. In her Answer, Ms. Walker stated her claim that the Change Form was "improperly executed." That phrase is ambiguous. A document may be "improperly executed" if the signature appearing on it was forged. But it may also be

"improperly executed" if the signatory lacked capacity to sign and the signature was the product of undue influence.  As a competing claimant, Ms. Allen could and should have taken steps (via formal discovery or otherwise) to pin down precisely what Ms. Walker meant by the phrase "improperly executed;" instead, she seems to have simply assumed that Ms. Walker was resting her claim exclusively on allegations of forgery.  Such an assumption was made at Ms. Allen's peril.  Nor does the Report of Parties' Planning Meeting (doc. 17) bolster Ms. Allen's argument.  In that document, Ms. Walker maintained that the signature of Ulysses Allen on the Change Form was "fraudulent."  (Doc. 17, ¶¶ 1(b)(2).)  Like improper execution, fraud may assume many different forms, from outright forgery to improper coercion of an incompetent signatory.  Again, Ms. Allen could and should have availed herself of available procedural mechanisms to ascertain precisely what Ms. Walker's claim was, rather than taking it on faith that her claim was rooted entirely in a forgery theory.[15]

Moreover, Ms. Allen's conclusory allegation of extreme prejudice rings hollow.  To be sure, the parties agreed that "[d]iscovery is to be limited to the authenticity of the signature of Ulysses Allen a/k/a Ular Allen on the Annuity Death Beneficiary Designation dated September 2, 2011."  (Doc. 17, ¶¶ 1(b)(2), 4(a).)  But the record before the Court reveals that Ms. Allen took no discovery at all prior to the August 18, 2014 discovery deadline fixed by the Rule 16(b) Scheduling Order.[16]  Having elected not to avail herself of any discovery before the deadline,

---

[15]     Of course, Ms. Walker could and should have used more precise language in her court filings delineating the basis for her claim to the Annuity benefits.  But Ms. Walker's utilization of vague terminology did not entitle Ms. Allen to adopt a narrow interpretation that suited her own purposes, to the legal exclusion of all other reasonable interpretations.  Simply stated, Ms. Allen had a full and fair opportunity to obtain formal confirmation/clarification from Ms. Walker as to the precise theory or theories animating her claim.  Her failure to avail herself of that opportunity is not an appropriate basis for foreclosing Ms. Walker from advancing any theory other than the one that Ms. Allen subjectively assumed was in play.

[16]     At best, Ms. Allen served two interrogatories and one request for production on Ms. Walker on August 13, 2014, precisely five days before the discovery deadline.  (*See* doc. 23.)  Such an effort is inadequate to avail oneself of court-supervised discovery procedures under the Federal Rules of Civil Procedure.  Indeed, the Scheduling Order directs that "[a]ll discovery is to be completed on or before **August 18, 2014**," with "completed" being a defined term meaning that "all interrogatories, requests for admissions, and requests for production ***have been filed and responded to.***"  (Doc. 19, ¶ 3 (emphasis added).)  By waiting until five days before the deadline before serving her discovery requests, Ms. Allen guaranteed that Ms. Walker (Continued)

Ms. Allen fails to show (or even to allege) that she would have proceeded differently had she been aware of Ms. Walker's incapacity / undue influence theory.

Besides, the discovery responses that Ms. Walker provided on or about September 2, 2014 (*i.e.*, less than three weeks after Ms. Allen served the requests on her) outlined facts and circumstances bearing on her incapacity / undue influence theory of recovery. (Doc. 44, Exh. 16.)[17] Ms. Allen identifies no facts that she would have obtained, no questions that she would have asked, and no documents that she would have sought had she subjectively appreciated that by "improperly executed," Ms. Walker intended to invoke a claim that Ulysses Allen lacked mental competence to sign the Change Form. Accordingly, there has been no showing of "extreme prejudice" to Ms. Allen that might warrant the draconian remedy of striking large chunks of Ms. Walker's brief and exhibits, even if Ms. Walker were asserting a brand-new claim therein (and the Court finds that she did not, in any event).

The point here is simple. Ms. Walker's Answer may be reasonably interpreted as including a claim for Annuity benefits based on a theory of mental incapacity or undue influence by Ms. Allen. That Ms. Allen's counsel chose to interpret that Answer in a very narrow, specific way, without formally verifying same with Ms. Walker, is not a valid basis for striking Ms. Walker's summary judgment arguments and evidence pertaining to that mental incapacity /

---

would be unable to respond prior to the August 18 discovery cutoff, and therefore that discovery would not be "completed" within the temporal parameters of the Scheduling Order.

[17] Ms. Allen calls into question the sufficiency of Ms. Walker's service of her discovery responses, complaining that her counsel never received them. (Doc. 46, at 7-8 n.1.) But Ms. Walker's counsel makes specific representations to this Court that she mailed her discovery responses to Ms. Allen's counsel at the latter's address of record "in a 9x13 brown envelope via the United States Post Office …, complete with $2.50 in U.S. postage." (Doc. 44, at 21.) The Court has no reason to believe, and no basis to find, that Ms. Walker's counsel, an officer of the court, is being untruthful. Nor did Ms. Allen's counsel appear to do anything to follow up with Ms. Walker's counsel in a timely manner as to the status of those discovery responses, short of complaining about same in these summary judgment filings submitted well after the fact. Besides, by not conducting any discovery during the court-ordered discovery period, then making a "side agreement" to take discovery on their own outside the applicable period, both Ms. Allen and Ms. Walker forfeited the benefit of judicial oversight and supervision of their discovery efforts. Accordingly, this Court declines to become enmeshed in refereeing that discovery dispute.

undue influence theory.  Nor has Ms. Allen identified any prejudice arising from Ms. Walker's use of that theory on summary judgment, inasmuch as (i) Ms. Allen took no discovery from Ms. Walker prior to the discovery deadline; (ii) Ms. Walker's subsequent discovery responses provided information bearing on the mental capacity / undue influence theory; and (iii) Ms. Allen recites not a single question she would have asked or document she would have requested in discovery had she been subjectively aware of this aspect of Ms. Walker's claim during the discovery period.

For all of the foregoing reasons, Ursula Allen's Motion to Strike (doc. 47) is **denied** with respect to argument, facts and evidence pertaining to the capacity of Ulysses Allen to sign the Change Form.[18]

### 2. *Genuine Issues of Material Fact Remain.*

Ms. Allen also contends that summary judgment should be entered in her favor because there are no record facts supporting Ms. Walker's claims to the contested Annuity proceeds.

---

[18] The Motion to Strike also contains three other components that may be addressed at this time.  First, Ms. Allen asks that "Exhibits 9, 10, 11 and 15 be struck as they amount to inadmissible hearsay and are not authenticated in any manner." (Doc. 47, ¶ 8.)  These exhibits consist of two doctor's letters, the Affidavit of Ms. Allen, and copies of documents purporting to bear the signature of Ulysses Allen.  The objection is frivolous.  As to the Affidavit of Ms. Allen, that exhibit is not hearsay.  It is an admission of a party opponent. *See* Rule 801(d)(2), Fed.R.Evid.  More generally, whether these exhibits are presently in admissible form is irrelevant. *See* Rule 56(c)(2), Fed.R.Civ.P. ("A party may object that the material cited to support or dispute a fact ***cannot be presented in a form*** that would be admissible in evidence.") (emphasis added).  It appearing that all such exhibits may be reduced to admissible form at trial, they are properly considered for summary judgment purposes. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form").  Second, Ms. Allen moves that Exhibit 16 be stricken as hearsay (which fails for the same reason as her first objection) and "because the contents of that Exhibit have never been produced" (which fails for the reasons documented in footnote 17, *supra*).  Third, Ms. Allen asks that Ms. Walker's Affidavit (doc. 44, Exh. 14) be stricken to the extent it contains hearsay statements of Ulysses Allen, attributes thoughts or opinions to him, or "is generally based upon inadmissible assertions." (Doc. 47, ¶ 9.)  The Court need not resolve this multifaceted, amorphous and ill-defined objection.  Because the undersigned does not consider those aspects of the Walker Affidavit in adjudicating the Motion for Summary Judgment, the Motion to Strike is **moot** in that respect.  In all other respects, the Motion to Strike is **denied**.

Examination of the summary judgment record in the light most favorable to the nonmovant readily establishes otherwise.

With regard to Ms. Walker's contention that the Change Form was "improperly executed" because Ulysses Allen was not competent to execute the document and Ms. Allen exercised undue influence in causing him to do so, the record contains ample supporting evidence. Most significantly, on August 22, 2011, just 11 days before Ulysses Allen signed the Change Form, Ms. Allen represented to the Probate Court in writing that her father "lacks the ability to make any major life decisions or the capacity to protect himself," "is incapable of settling or filing a lawsuit or managing his health and financial affairs," and is at risk of "exploitation." (Doc. 44, Exh. 1.) Similarly problematic for the validity of the Change Form are Ms. Allen's representations in the ongoing will contest in Probate Court, such as the following: "Since prior to his several hospitalizations during 2011, the decedent lacked the mental capacity to execute a Will," and he was "easily influenced" by others. (Doc. 31, Exh. 6.)[19] Given Ms. Allen's multiple admissions in court filings that Ulysses Allen was "incapable of … managing his … financial affairs" in August 2011, that he "lacked the mental capacity to execute a Will" at the time of his August 2011 hospitalization, and that he was vulnerable to "exploitation" and "easily influenced" by others, a reasonable factfinder could conclude that the Change Form was "improperly executed" at a time when Ulysses Allen was incompetent and that Ursula Allen misused her authority to induce him to sign the Change Form in her favor during the 15-day period of her temporary guardianship. The record construed in the light most favorable to Ms. Walker supports a reasonable inference that the Change Form was improperly executed and therefore invalid because of Ulysses Allen's lack of competence and Ms. Allen's undue influence and improper self-dealing in her role as temporary guardian.

Ms. Walker's alternative theory that the Change Form is void because the signature on such form "was not the known signature of Ulysses Allen" likewise finds sufficient evidentiary support in the record to withstand Ms. Allen's Rule 56 Motion. For example, Ms. Walker avers that in 2005 in her presence, a Social Security representative notified Ulysses Allen that he

---

[19] Of course, the summary judgment evidence of Ulysses Allen's lack of competency to sign a valid Change Form in September 2011 is not confined to Ms. Allen's own admissions, but finds further support in the physician's letters, the findings of the Probate Court in August 2011, the dementia diagnosis, and so on.

should sign his name "Ullar Allen" because that was the name presented on his birth certificate, and that Ulysses Allen did just that going forward. (Doc. 44, Exh. 14, at 3.)[20] The record also contains numerous documents that Ulysses Allen purportedly signed with the name "Ullar Allen" between 2005 and 2012, such as his Alabama driver license, his BBVA Compass signature card, his Alabama boat registration certificate, his February 2012 Will, his endorsements of U.S. Treasury checks, and so on. (Doc. 44, Exhs. 15 & 16.) Yet Ulysses Allen's signature on the Change Form appears as "Ulysses Allen" rather than "Ullar Allen." (Doc. 44, Exh. 4.) This discrepancy lacks any conclusive explanation in the summary judgment record. In short, then, record evidence in the light most favorable to Ms. Walker shows that, for a period of years, Ulysses Allen had regularly signed his name "Ullar Allen" on important legal and financial documents; however, the signature on the Change Form reads "Ulysses Allen." This combination of facts raises a reaosnable inference that the signature on the Change Form is not genuine and is not that of Ulysses Allen at all, thereby enabling Ms. Walker to reach a trial on this theory.[21]

**IV. Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Ursula Allen's Motion to Strike (doc. 47) is **moot** with respect to portions of the Carla Walker Affidavit that were neither addressed nor relied upon in this Order, and is **denied** in all other respects;

---

[20] To the extent that Ms. Allen might object to this statement as hearsay, such an objection appears misguided. The statement of the Social Security representative is not being offered for its truth (*i.e.*, that a particular form of Ulysses Allen's signature was inherently better or preferable to any other), but rather for its effect on the listener (*i.e.*, that it prompted Ulysses Allen to change his habit and manner of signing his name); therefore, it does not appear to be hearsay under Rule 801(c)(2), Fed.R.Evid. Likewise, because Ms. Walker states she was present and witnessed this exchange, her averment appears to satisfy the personal knowledge requirement for admissibility.

[21] Of course, there is contrary evidence as well. Specifically, Ms. Allen avers that she personally witnessed Ulysses Allen sign the Change Form. (Doc. 44, Exh. 11 at 2.) The resulting competing inferences are not properly adjudicated in the context of the pending Rule 56 Motion, but rather give rise to genuine issues of material fact to be submitted to the factfinder for resolution at trial.

2. Ursula Allen's Motion for Summary Judgment (doc. 31) is **granted** as to any claims that Carla Walker may purport to be bringing on behalf of the Estate of Ulysses Allen, but is in all other respects **denied**; and

3. This action remains set for Final Pretrial Conference on **January 13, 2015** at **2:30 p.m.**, with non-jury trial to follow in the **February 2015** civil trial term.

DONE and ORDERED this 22nd day of December, 2014.

                                                                        s/ WILLIAM H. STEELE
                                                                        CHIEF UNITED STATES DISTRICT JUDGE